In the Matter of the Application of ORSON D. MUNN, Respondent, to Vacate an Assessment Levied upon his Property for Sewers in Morris Street and Broadway.

THE CITY OF NEW YORK, Appellant.

1. NEW YORK CITY — ASSESSMENT FOR LOCAL IMPROVEMENTS — RIGHTS OF PROPERTY OWNERS. Property owners in the city of New York have a right to be heard before the proper city authorities with reference to an assessment for a local improvement, but after the hearing and confirmation of the assessment they have no right to attack it in the courts, except as specifically prescribed in the statute.

2. SAVING CLAUSE OF CHARTER — REVIEW OF ASSESSMENT. The saving clause of section 1614 of the charter of the city of New York (L. 1897, ch. 378), to the effect that no right or remedy of any character shall be lost, impaired or affected by reason of the act, and that the act shall not affect or impair any act done or right accruing, accrued or acquired, is comprehensive enough to enable a property owner to review an assessment for a local improvement made when the law in force was the Consolidation Act (L. 1882, ch. 410), although at the time the petition for the review of the assessment was filed in the court the new charter had gone into effect.

3. WHETHER AN ASSESSMENT IS BASED ON ERRONEOUS PRINCIPLE A QUESTION OF LAW — WHEN COURT MAY NOT REVIEW INEQUALITY IN ASSESSMENT — LIMITATION ON POWER NOT APPLICABLE TO CERTAIN CASES. Whether an assessment for a local improvement is based upon an erroneous principle, so as to enable the court, in the exercise of its discretion, to set it aside under section 903 of the Consolidation Act, as amended by chapter 613 of the Laws of 1895, is a question of law, and if the assessment was based upon the proper principle courts have no power to review it, upon the ground that it is unequal and unjust, since that was a question exclusively for the assessors, subject to review and correction by the board of revision; but this limitation does not apply to condemnation or street opening proceedings, or other proceedings under special statutes that are subject to confirmation by the courts.

4. ASSESSMENT IN NAME OF FORMER OWNER. An assessment for a local improvement in the city of New York under the Consolidation Act is not invalidated by the insertion in the roll as owner of the name of a former owner in whose name the property stood on the assessment roll for the purposes of general taxation, since the fair meaning of the provision of section 869, that the assessors shall state the name of the owner of the property, and that it shall be their duty to ascertain by inquiry to be made of the deputy commissioner of taxes of the ward in which the property assessed is situated, and by inquiry of the receiver of taxes as to

such ownership, is that, in designating the owners, they shall be guided by the names on the tax book.

5. APPEAL — WHEN ORDER SETTING ASIDE ASSESSMENT FOR LOCAL IMPROVEMENT IS A FINAL ORDER IN A SPECIAL PROCEEDING. An order in a special proceeding instituted by a property owner to review an assessment levied for a local improvement which sets aside the assessment not only as to him but as to all the property owners, is a final order determining the proceeding and is appealable to the Court of Appeals.

*Matter of Munn,* 49 App. Div. 232, reversed.

(Argued November 12, 1900; decided December 11, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, made March 9, 1900, affirming an order of Special Term vacating an assessment upon certain property in the city of New York.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*John Whalen,* Corporation Counsel (*Theodore Connoly* and *George L. Sterling* of counsel), for appellant. An appeal lies to the Court of Appeals from the order of the Appellate Division in this proceeding. (*Matter of Talmage,* 160 N. Y. 512; *Moulton* v. *Cornish,* 138 N. Y. 133; *Matter of Dodd,* 27 N. Y. 629; *Matter of Palmer,* 40 N. Y. 561; *Matter of Douglass,* 46 N. Y. 42; *Matter of Eager,* 46 N. Y. 100; *Matter of P. E. P. School,* 46 N. Y. 178; *Matter of Astor,* 50 N. Y. 363; *Matter of Cameron,* 50 N. Y. 502; *Matter of Mayer,* 50 N. Y. 504.) If the petitioner's remedies are to be determined by the New York City Consolidation Act, nothing illegal has been shown, and the court below has fallen into serious error in annulling the action of the assessors and of the board of revision without any evidence of illegal action on their part. (*Matter of Merriam,* 84 N. Y. 596; *Norwood* v. *Baker,* 172 U. S. 269; *Matter of Eager,* 46 N. Y. 100; *Matter of Cruger,* 84 N. Y. 619; *Matter of Deering,* 85 N. Y. 1; *People ex rel.* v. *Gilon,* 126 N. Y. 147; *Clark* v. *Vil. of Dunkirk,* 12 Hun, 181; *People ex rel.* v. *County Court,* 55 N. Y. 604; *O'Reilly* v. *City of Kingston,* 114 N. Y. 439; *Co. of Monroe* v. *City of Rochester,* 154 N. Y.

570.) The alleged error that the name of the petitioner is not shown on the assessment list does not justify the order of the court below. (*Matter of Smith*, 99 N. Y. 424; *Matter of N. Y. C. & H. R. R. R. Co.*, 49 App. Div. 281; 163 N. Y. 604.) The court has no power to vacate or reduce the assessment in the form of procedure adopted by the petitioner and for the alleged illegal action. (*Matter of Smith*, 99 N. Y. 424; *Matter of Feust*, 121 N. Y. 299; *Matter of Brainerd*, 51 Hun, 380; 117 N. Y. 623.)

*Henry De Forest Baldwin* for respondent. Under chapter 613 of the Laws of 1895 the Supreme Court had power to review the work of the assessors and to redetermine all questions of fact upon evidence taken in that court. (*People ex rel. v. Coleman*, 107 N. Y. 541; *People ex rel. v. Hicks*, 105 N. Y. 198; *People ex rel. v. Barker*, 152 N. Y. 417.) The assessment should be set aside, because the notice provided for in section 869 of the Consolidation Act was not given by the assessors. (*Paillet v. Youngs*, 4 Sandf. 50; *Matter of Tappen*, 36 How. Pr. 390; *Stebbins v. Kay*, 123 N. Y. 31; *Matter of Wood*, 24 Misc. Rep. 561; *Cromwell v. MacLean*, 123 N. Y. 474; *Sanders v. Downs*, 141 N. Y. 422; *Whitney v. Thomas*, 23 N. Y. 285; *Hume v. Waniscott*, 46 Mo. 145; *Desmond v. Babbitt*, 117 Mass. 234; *Abbott v. Linden*, 42 Mo. 167.) The assessment should also be set aside on the grounds that property was omitted from the area of assessment which should have been included, and that the result of the assessors' work in distributing the amount assessable was so grossly unjust as to amount to illegality and constitute substantial error. (*Matter of N. Y. P. E. School*, 75 N. Y. 324; *Hassan v. City of Rochester*, 67 N. Y. 528; *McK. B. Co. v. Trustees*, 15 App. Div. 139; *State v. Town of Union*, 53 N. J. L. 67; *Longley v. City of Hudson*, 4 T. & C. 353; *Co. of Monroe v. City of Rochester*, 154 N.Y. 570; *Clark v. Vil. of Dunkirk*, 12 Hun, 182; 75 N. Y. 612; *Matter of Murphy*, 20 Hun, 346; *People ex rel. v. Adams*, 88 Hun, 122; 147 N. Y. 722; *People ex rel. v. Jeff. Co. Court House*, 55 N. Y. 604.)

The city of New York has no right to appeal to this court. (L. 1897, ch. 378, § 964; *Matter of Auchmuty*, 79 N. Y. 622; *Bryant* v. *Thompson*, 128 N. Y. 426; *Abbott* v. *N. Y., L. E. & W. R. Co.*, 120 N. Y. 652; *Matter of Cuddeback*, 3 App. Div. 103; *Favon* v. *Mason*, 90 Hun, 426.)

O'BRIEN, J. This is a special proceeding instituted by a property owner to review an assessment levied for a local improvement. The petitioner was the owner of a block on lower Broadway at or near the corner of Morris street, the drain from which passed over his neighbor's lot. There was a disagreement between himself and the owner of the lot over which the drain passed as to his right to maintain the drain. The neighbor threatened to revoke, or actually did revoke, the license for the maintenance of such drain. The petitioner then applied to the city authorities to construct a public sewer into which he could drain. After considerable importunity and much negotiation the petitioner succeeded in persuading the city authorities to construct the sewer. It was built from a point on Broadway seventy-one feet and four inches north of Morris street southerly through Broadway to Morris street, and thence westerly through the latter street to Greenwich street. The total expense of construction, including surveyor's and inspector's fees was $4,469.79. The city, having defrayed the whole expense of this work, proceeded to levy an assessment upon the property benefited. The assessment was imposed upon the petitioner and another property owner on Broadway and eight property owners on Morris street, and this assessment was confirmed by the board of revision on the 15th of December, 1897. In December, 1898, nearly a year after the assessment had been confirmed, the petitioner, upon whose application the sewer had been built, filed a petition in the Supreme Court, in which he stated, among other things, that the assessment was unjust and unequal, and prayed that the court set it aside. The court, after a hearing, granted this application, and not only set the assessment aside as to the petitioner, but as to all the other property

owners as well, though it does not appear that any of them complained of it. This order was affirmed upon appeal, and the city has appealed to this court.

The power of the courts to interfere with assessments for local improvements in the city of New York has always been quite limited. The reason for this is very obvious, since the various charters contain a provision constituting a local tribunal for that purpose, composed of the comptroller, corporation counsel and president of the board of public improvements. This board was clothed with ample judicial powers to revise, correct or confirm all such assessments, and in cases where it was deemed necessary to remit the assessment roll to the assessors with directions to make a new assessment. But when this board had completed its duty the courts were limited in their power to review the assessment to a few specific questions. The property owners have a right to be heard before the board and before the assessors, but after that hearing and the confirmation of the assessment they have no right to attack it in the courts, except as specifically prescribed in the statute.

In this case we must first inquire with respect to the particular law under which the petitioner has a right to review the assessment. At the time it was made the law in force was the Consolidation Act. At the time that the petition was filed in the court that act had been repealed by the new charter, which went into effect on the first of January, 1898, but the new charter preserved all rights that existed under the charter which had been repealed. By section 1614 it is provided that no right or remedy of any character shall be lost or impaired, or affected by reason of this act. This act shall not affect or impair any act done or right accruing, accrued or acquired. Any right which a party had under the old charter could be asserted, enforced or prosecuted in the same manner as when the right accrued, except as otherwise specially provided. This saving clause is comprehensive enough to enable the petitioner to review this assessment under the law existing when it was made. His right in that regard is to be

found in section 903 of the Consolidation Act, as amended by chapter 613 of the Laws of 1895, which reads as follows: "No court shall vacate or reduce any assessment in fact or apparent confirmed after June ninth, eighteen hundred and eighty, whether void or voidable, on any property for any local improvement thereafter completed otherwise than to reduce any such assessment to the extent that the same may be shown by parties complaining thereof to have been in fact increased in dollars and cents by reason of fraud or substantial error. * * * Provided, nevertheless : In case the principle of apportionment of an assessment be erroneous, the court shall reduce the assessment on the lots of the petitioner aggrieved thereby to the lawful and just amount that ought to have been assessed thereon, or, in its discretion, the court may set aside and annul the entire assessment and the record thereof and direct the assessment list to be returned to the board of assessors for reapportionment according to law."

It will be seen that the right to review the assessment in the courts has been conferred upon the aggrieved property owner alone. The city has no right to appeal to the courts for the purpose of questioning any assessment levied under its own authority and confirmed by its own officers. The assessment cannot be assailed or set aside even when it is void or voidable. Power is conferred upon the courts to reduce assessments to the extent that they may be shown to have been in fact increased by reason of fraud or substantial error. The power to set aside an assessment altogether and remit the record to the assessors has been conferred in one case only, and that is where it appears that the assessors in making the assessment have proceeded upon or adopted some erroneous principle. In such case the court has power, in the exercise of its discretion, to set aside the whole assessment although but a single property owner complains. But whether an assessment in any case is based upon an erroneous principle or upon correct principles is a question of law. In this case, as we have seen, the entire assessment was vacated, but it is not claimed that, in making it, the assessors adopted any erroneous legal prin-

ciple. The most that is claimed is that the assessment was unequal and, therefore, unjust, but that was a question exclusively for the assessors, subject to review and correction by the board of revision. It would be manifestly impossible for the courts to entertain appeals for the purpose of adjusting questions in regard to the equality of every local assessment. When the board of revision has acted, that question is no longer open, and so this court has held. (*In re Cruger*, 84 N. Y. 619; *In re Church Street*, 49 Barb. 455; *In re Deering*, 85 N. Y. 1; *People ex rel. Davidson* v. *Gilon*, 126 N. Y. 147.) Had the assessors imposed the assessment uniformly in proportion to the frontage of each lot when all were not benefited in like proportion that would have been an erroneous principle, since all were not equally benefited. Indeed, such a principle of assessment has been held to be unconstitutional in certain cases by the Supreme Court of the United States. (*Norwood* v. *Baker*, 172 U. S. 269; *Conde* v. *City of Schenectady*, 164 N. Y. 258.) A uniform assessment upon all the property owners in proportion to the assessed value of the property might also be held to be based upon an erroneous principle. There are many other methods which the assessors might have adopted in levying the assessment that might be open to question as involving an erroneous rule, but in this case the rule adopted for the imposition of the assessment was that each property owner was bound to pay for the expense of the sewer in proportion to the benefits received from its construction. The statute requires the assessors to proceed upon that principle and to distribute the expense of the improvement among the owners and occupants of all the houses and lots intended to be benefited thereby in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire. Inasmuch as the assessors and the board of revision had the exclusive power to determine what property was benefited and the proportion of benefits as to each property owner, it seems to be quite clear that the court had no power in this case to set aside the assessment. This limitation on the power of the courts has no reference to condemnation or street

opening proceedings or other proceedings under special statutes that are subject to confirmation by the courts.

The petitioner made another objection to the assessment which seems to have been held good in the courts below. He complains that his name was not inserted in the roll as owner opposite the assessment, as required by the statute. The name of a former owner, from whom the petitioner had purchased the property a few years before, was inserted, and for this mistake it is contended that the assessment is void. We have already seen that the statute prohibits any court to interfere with a local assessment, even on the ground that it is void or voidable. The only power that the court has over such assessments is to reduce them. But this irregularity does not affect the validity of the assessment. The statute (§ 869) provides that the lots shall be designated by the same ward or block numbers as used upon the assessment roll for the purposes of general taxation. The assessors, therefore, in describing the property, are directed to consult the tax books. The statute also provides that they "shall state the names of the owner or owners and occupant or occupants, and that it shall be their duty to ascertain by inquiry to be made of the deputy commissioners of taxes of the ward in which the property assessed is situated and by inquiry of the receiver of taxes as to such ownership, and that such persons shall afford the requisite information." The fair meaning of this statute is, that the assessors, in describing the property and in designating the owner, shall be guided by the names and numbers on the tax book. It is not alleged or claimed that there was any omission to comply with this provision of law. The petitioner could have had his name inserted upon these books in place of that of his vendor, and the fact that his name was omitted from the assessment roll under these circumstances, does not render the assessment void, nor even irregular. This is apparent from another provision of the statute (§ 871) which requires the assessors to give notice to the property owners of the completion of the assessment. The notice required is by publication in the City Record. The

statute directs that the notice shall describe the limits
embraced by each assessment and shall contain a request for
all persons whose interest may be affected thereby and who
may be opposed to the same to present their objections in
writing to the chairman of the board within thirty days from
the date of the notice. It is not alleged or claimed that there
was any omission to give this notice. The petitioner, there-
fore, had notice of the assessment and an opportunity to be
heard, since his interest was affected by the assessment; and
in view of the fact that the sewer was built upon his own
application and largely for his benefit it is quite clear that he
has no grounds to complain based upon the form of the assess-
ment roll. The fact that his name does not appear upon the
roll is to his advantage since it relieves him from all personal
liability for the payment of the assessment. The assessment
in this case is small comparatively, but the questions involved
are important since they involve the right of the city to reim-
burse the treasury for moneys which it may expend in local
improvements for the benefit of private property. There is
no question with respect to the honesty and fairness of the
whole transaction. There was no fraud either in letting or
executing the contract. The improvement was made with
due regard to economy and the property owners have the
benefit of it. Under such circumstances an assessment should
not be disturbed unless the statute requires the court so to do.
In this case, I think the learned courts below exceeded the
power which the statute has conferred. It was not a case
where the assessment was increased in consequence of fraud
or substantial error. No erroneous principle was adopted as
the basis of the assessment. The principle adopted was the
distribution of the expense upon the property owners in pro-
portion to benefits and the assessors were the sole judges of
the question of benefits and the extent and proportion of the
same as between all the property owners, subject to review
and correction by the board of revision. The petitioner's
share of the assessment was very much larger than that of any
other property owner, but the assessors had the right to decide

as they did that the benefits received by him in consequence of the construction of the sewer were greater in the same proportion and that the assessment imposed was only the just and equitable measure of benefits received.

The final point is made that the order from which the appeal is taken is not reviewable in this court. All orders are appealable to this court and reviewable here that "finally determine a special proceeding." Both the Constitution and the statute so declare. (Const. art. 6, § 9; Code Civ. Pro., § 190; *Van Arsdale* v. *King*, 155 N. Y. 325.)

All admit, as they must, that it is an order in a special proceeding and the only ground of contention is whether it has finally determined the special proceeding in which it was made. Such orders must be either final or interlocutory, and no one, not even the learned counsel who insists upon the point, ventures to assert that it is interlocutory, and if it is not, then it would seem to be a plain conclusion that it is final. It has swept away forever the assessment which the city imposed under the law to reimburse the treasury for money expended in the construction of a sewer which private parties were legally liable to pay, and it relieves these property owners forever from any liability to pay that assessment. It would seem to be a very reasonable, if not an irresistible conclusion, that an order which finally and forever deprives the city of all benefit and relieves the property owners from all liability under the assessment now before us is a final order and has finally determined this special proceeding. (*In re Talmage*, 160 N. Y. 512; *Moulton* v. *Cornish*, 138 N. Y. 133; *The Village of Champlain* v. *McCrea*, 165 N. Y. 264.)

The orders of the Appellate Division and of the Special Term should be reversed, and the petition dismissed, with costs.

PARKER, Ch. J., GRAY, HAIGHT, LANDON, CULLEN and WERNER, JJ., concur.

Orders reversed. etc.