PEOPLE ex rel. NEW YORK, W. & B. RY. CO. et al. v. WALDORF,
Mayor, et al.

(Supreme Court, Appellate Division, Second Department.   June 11, 1915.)

1. MUNICIPAL CORPORATIONS ☞450—TAXATION—ASSESSMENTS FOR PUBLIC
   IMPROVEMENTS.

   The common council of a city resolved that the cost of widening a
   certain avenue be defrayed by an assessment laid on the entire city as
   the area of assessment.   At a subsequent meeting such resolution was
   amended, by charging one-third of the cost upon an area constituted by
   fronting and abutting properties and the remainder upon the city at
   large.   *Held* that, the power to determine the taxing districts for any
   particular burden being purely a legislative power, the second resolution
   was within the power of the council.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
   1073, 1074; Dec. Dig. ☞450.]

2. MUNICIPAL CORPORATIONS ☞450—TAXATION—ASSESSMENT DISTRICTS.

   A city council passed a resolution fixing the area of assessment for
   widening a certain street.   Subsequently it published notice of a pro-
   posed change in such area.   The notice provided that the council would
   consider the matter of said local improvement and afford a hearing
   thereon with reference to the district of assessment designated by its
   committee on its amended and supplemental report, and that such coun-
   cil would take such action thereon as it deemed proper at a meeting to
   be held upon a certain date.   *Held*, that such notice sufficiently stated
   that the council proposed to change the assessment district, within the
   charter requirements.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig.
   §§ 1073, 1074; Dec. Dig. ☞450.]

3. MUNICIPAL CORPORATIONS ☞425—TAXATION—PROPERTY BENEFITED—
   RAILROAD PROPERTY.

   The property of a railroad company, consisting of buildings for stores
   rented by the railroad company to others, is not property benefited,
   within a resolution assessing property for street widening purposes;
   the benefit being too remote and speculative.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
   1031–1034; Dec. Dig. ☞425.]

4. MUNICIPAL CORPORATIONS ☞429—TAXATION—ASSESSMENT—"ABUTTING
   PROPERTY."

   That property abutting on a street to be widened may be assessed, it
   is not necessary that the entire boundary of the land should lie along
   or touch such land.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
   1039; Dec. Dig. ☞429.

   For other definitions, see Words and Phrases, First and Second Series,
   Abutting.]

Certiorari by the People, on the relation of the New York, West-
chester & Boston Railway Company and others, against Frederick H.
Waldorf, Mayor of New Rochelle, and others, to review an assessment
made by the common council.   Assessment vacated.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-
TON, and PUTNAM, JJ.

Ralph Polk Buell, of New York City, for relators.
Edw. W. Davidson, of New Rochelle, for respondents.

JENKS, P. J. On September 27, 1910, the common council of New Rochelle, pursuant to article 30 of the charter (chapter 559, Laws of 1910), resolved that the cost of widening North avenue be defrayed by an assessment laid upon the entire city as the area of assessment. On March 28, 1911, the common council amended its resolution by charging one-third of the cost upon an area of assessment constituted by properties fronting or abutting on the said avenue, and charged the other two-thirds upon the city at large.

[1] It is contended that in the absence of specific statutory authority the second resolution was ultra vires the common council, because in passing the first resolution it acted judicially. But the power to determine the taxing district for any particular burden "is purely a legislative power." Cooley on Taxation (2d Ed.) 149; People ex rel. Griffin v. Mayor, etc., 4 N. Y. 419–425, 55 Am. Dec. 266 et seq.; Spencer v. Merchant, 125 U. S. 345–353, 8 Sup. Ct. 921, 31 L. Ed. 763; State, etc., v. Road Com'rs, 41 N. J. Law, 83; Hamilton's Law of Special Assessments, § 213. The second resolution, changing or amending the first resolution, was within the legislative power of the common council. Dillon on Municipal Corporations (5th Ed.) § 584. The same author, in section 539, says:

"At any time before the *rights of third persons* have vested, a council or other corporate body may, if consistent with its charter and rules of action, *rescind previous votes and orders.* Thus a vote levying a tax, so long as it rests in mere resolution, and has not been acted upon, may be reconsidered, and, if rescinded, the collector cannot legally proceed to collect the tax."

McQuillin on Municipal Ordinances, § 198, says:

"Subject to the constitutional provision forbidding the impairment of the obligation of contracts, as explained elsewhere, .improvement ordinances which are not wholly void may be amended, even after the contract is let and the work begun, in like manner as other ordinances."

It is not contended that there were any contract rights that could be affected during the period intervening the passage of the first and the second resolutions. The learned counsel for the appellant cites Matter of Phelps, 110 App. Div. 69, 96 N. Y. Supp. 862. I did write as an isolated sentence that "the act of determination of the district was judicial." I should have written the act of determination *within* the district was judicial. The intention of the writer is understood by reference to the authority cited (O'Reilley v. City of Kingston, 114 N. Y. 439, 21 N. E. 1004), by turning to page 448 thereof (21 N. E. 1006). As an illustration of the distinction that should have been made, I refer to our decision in Matter of the City of New York (Opening 71st St.) 87 App. Div. 52, 83 N. Y. Supp. 1081. As to the character of the act and the power of the common council in the premises, see, also, People ex rel. Locke v. Common Council, 5 Lans. 11; Ashton v. City of Rochester, 133 N. Y. 192, 30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619; People ex rel. Dady v. Supervisor, 154 N. Y. at 389, 48 N. E. 813; Harrison v. Village of New Brighton, 110 App. Div. 267, 97 N. Y. Supp. 246. People ex rel. Thomson v. Supervisors, 35 Barb. 408, a Special Term judgment cited by the relators, may be discriminated, in that the act considered was "to apportion the tax so to be raised

among the several towns and wards of their county, as shall seem to them to be equitable and just," and this the court pronounced judicial. Even so, the decision is both questioned and explained in People ex rel. Hotchkiss v. Supervisors, 65 N. Y. 227, and in People v. Stocking, 50 Barb. 581–583. When cited elsewhere, it is to sustain acts clearly judicial or quasi judicial.

[2] Another contention is that the notice published by the city clerk on March 2, 1911, in pursuance of the resolution of February 28, 1911, was insufficient notice to the relator of the proposed change in the area of assessment. Section 423 of the charter provides that upon the presentation of the report of the committee of the common council, to whom must be referred a petition for the improvement (section 422), the common council, if it determines to proceed with the improvement, shall direct the city clerk to give notice for publication thereof for at least two weeks in the official newspapers of the time and place in which the council will consider the matter. After the passage of the first resolution, the common council gave notice by due publication that it would consider the matter of said local improvement and afford a hearing thereon with *reference to the district of assessment designated by its committee on its amended and supplemental report submitted to the council February 28, 1911, and that said council would take such action thereon as it deemed proper* at a meeting to be held in its chambers, designating them, on a certain designated day and hour 19 days distant. The criticism that the notice was "wholly insufficient in that it did not advise that the common council proposed to change or amend the district of assessment or to consider a change thereof," is hypercritical. I have italicized the words that indicate the sufficiency thereof.

[3] The relator, the railroad corporation, contends that the property owned by it was owned, occupied, and used by it for a public purpose in connection with the construction, maintenance, and operation of its railroad, and that the assessors were without jurisdiction, in that an assessment was imposed for benefit upon property which in law and in fact could not be benefited by said improvement. So far as the relator's right of way is concerned, I think that we must follow our decision in N. Y., N. H. & H. R. R. Co. v. Vil. of Portchester, 149 App. Div. 893, 134 N. Y. Supp. 883, affirmed 210 N. Y. 600, 104 N. E. 1135, and that we should follow the application of the rule made in Matter of the City of New York (East 136th St.), 127 App. Div. 672–675, 111 N. Y. Supp. 916. The authorities in other jurisdictions are not in accord as to whether railroad property used as a station can be assessed for the improvement of an adjoining street. See Page and Jones on Taxation by Assessment, § 596, and notes. I think that the sounder rule is that which denies the right to assess station property for a street improvement such as is contemplated in this case.

It is proposed by these proceedings to widen a street near property of a stream surface railway, and the local authorities would assess the property for the reason that there is a station thereon, wherein are two shops which are rented out by the railway corporation. The relators show that no part of the station was constructed solely to give

space for shop purposes; that the kind of structure was required by the fact that the railroad is above the grade of North avenue, crosses it by a bridge, that the platforms and other appurtenances are necessarily on a level with the railroad tracks, that access from North avenue is by means of stairways, and that the stores will be rented out by the railway company for news stands or such other booths as are usually found in railway stations for the convenience of passengers. The respondents answer that one of the shops is rented to an agent of the Union News Company and the other to a real estate dealer. The theory of local assessment is benefit. And the reason for exemption rests in the inability to perceive how such premises are made by the improvement any more valuable for the purposes for which the railroad company can use them. The widening of the street presumably improves it for travel and for access; but the railroad is not benefited, in that it carries more passengers or receives a greater compensation. See New York & New Haven R. R. Co. v. City of New Haven, 42 Conn. 279–284, 19 Am. Rep. 534; Old Colony & Fall River R. R. Co. v. County of Plymouth, 14 Gray (Mass.) 155–163; Naugatuck Railroad Co. v. Waterbury, 78 Conn. 193, 61 Atl. 474; Boston & Maine R. R. v. County of Middlesex, 1 Allen (Mass.) 324; State, Morris & Essex R. R. Co., Pros., v. Jersey City, 36 N. J. Law, 56. To assess this railroad station property for the reason that the widening of the street might make such shop space in its station more valuable is, I think, assessing for benefits too remote and too speculative, and is to destroy the rule by refinement.

[4] I think that the property of the relator the Millbrook Company abuts upon the street. The relator contends that "a large part" of its land does not abut. This is due to the fact that one side thereof is bounded by North avenue and also by another street which appears to continue North avenue. The assessment map (see section 428 of the charter) shows, however, that a part of the land lies upon, touches, and meets North avenue, and thus it is bounded by it. See Hughes v. M. E. R. Co., 130 N. Y. 26, 28 N. E. 765. It is not essential to abutting upon a street that any entire boundary of the land should lie along or touch the street. The land "abuts" thereon within the recognized meaning of the word.

The assessment, so far as it affects the property of the relator the railroad company, was erroneous, and it and the confirmation thereof should be vacated and set aside, with costs to the said relator. All concur.